ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. Titus Rayon Jenkins was convicted of possession of at least one-tenth gram but less than two grams of cocaine. The Pike County Circuit Court sentenced Jenkins as a repeat drug offender to sixteen years in the custody of the Mississippi Department of Corrections (MDOC) with four years suspended followed by four years of post-release supervision. Furthermore, the circuit court ordered Jenkins to pay a $10,000 fíne, court costs, and $750 toward the payment of his court-appointed lawyer. Aggrieved, Jenkins appeals and raises two issues: (1) the circuit court erred when it allowed the prosecution to introduce evidence of Jenkins’s pri- or conviction for selling cocaine, and (2) the circuit court committed plain error when it did not sua sponte prohibit the prosecution from commenting on Jenkins’s right to remain silent. Finding no error, we affirm.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 ¶ 2. MDOC probation officers Robbie Roberts and Todd Dillon received a tip that one of their probationers, Quentin Nobles, was selling drugs from the porch of the home at 404 Adams Street in McComb, Mississippi. As the probation officers drove and looked for that address, they recognized two men sitting on the porch: Nobles and Jenkins — both of whom were probationers under their supervision. Sabrina Martin, who actually lived at that address, was also sitting on the porch. The probation officers knew that there was an outstanding bench warrant for Jenkins’s arrest because Jenkins had absconded supervision while on probation. As the probation ' officers drove by, Jenkins jumped from Martin’s porch and began walking around to the back of Martin’s house.
 
 [1]
 

 ¶ 3. Officer Dillon called out to Jenkins. Officer Dillon asked Jenkins to come speak to him. However, Jenkins ran from Officer Dillon. Officer Dillon chased Jenkins as Jenkins ran toward a tree line behind Martin’s home. Officer Roberts ran around the opposite side of Martin’s home. Officer Dillon caught Jenkins as Jenkins reached the tree line behind Martin’s home. Immediately before Officer Dillon caught Jenkins, Officer Dillon saw Jenkins throw a plastic bag into the brush near the tree line. Officer Dillon restrained Jenkins while Officer Roberts caught up. When Officer Roberts gave Officer Dillon a set of handcuffs, Officer Dillon told Officer Roberts that Jenkins had thrown a bag into the brush. Officer Roberts found the bag that Officer Dillon had described. Subsequent testing at the Mississippi Crime Laboratory revealed that the bag contained nine-tenths of a gram of cocaine.
 

 ¶ 4. Jenkins was indicted for possession of between óne-tenth gram and two grams of cocaine. Prior to trial, Jenkins filed a motion in limine to prohibit the prosecution from referencing the fact that Jenkins had been convicted of selling cocaine in 2002. The basis of Jenkins’s argument
 
 *52
 
 and the prosecution’s counter-argument will be discussed in greater detail in the analysis portion of this opinion. Ultimately, the circuit court granted Jenkins’s motion in part and denied it in part. The circuit court held that the prosecution would be allowed to present evidence that Jenkins was on felony probation at the time of his arrest. Furthermore, the circuit court held that the prosecution would be allowed to present evidence that there was an outstanding warrant for Jenkins’s arrest. However, the circuit court also held that the prosecution would be prohibited from presenting evidence regarding the precise nature of Jenkins’s prior conviction unless Jenkins first “opened the door.” In other words, the circuit court held that the prosecution could present evidence that Jenkins had a prior felony conviction, but the prosecution was not allowed to divulge that Jenkins’s prior felony conviction was for selling cocaine unless Jenkins first revealed that fact.
 

 ¶ 5. As previously mentioned, Jenkins was found guilty of possession of between one-tenth gram and two grams of cocaine. Jenkins appeals. Other factual matters and events that occurred during Jenkins’s trial will be discussed as necessary.
 

 ANALYSIS
 

 I. EVIDENCE OF JENKINS’S PRIOR CONVICTION
 

 ¶ 6. Jenkins claims the circuit court erred when it partially denied his motion in limine. According to Jenkins, the circuit court should have prohibited the prosecution from presenting evidence of his prior conviction. We are mindful of our standard of review under the circumstances. The admission of evidence is within the sound discretion of the trial court, subject to reversal on appeal only if there is an abuse of that discretion.
 
 Eckman v. Moore,
 
 876 So.2d 975, 984 (¶ 31) (Miss.2004).
 

 ¶ 7. Jenkins actually raises two separate issues under this heading. First, Jenkins claims that evidence of his prior conviction was not admissible pursuant to Rule 404(b) of the Mississippi Rules of Evidence. Second, Jenkins claims that evidence of his prior conviction was not admissible pursuant to Rule 403 of the Mississippi Rules of Evidence. We address each argument in turn.
 

 A. RULE 404(b)
 

 ¶ 8. As a preliminary matter, it is important to reiterate that the circuit court granted Jenkins’s motion in part. That is, the circuit court held that the prosecution was prohibited from presenting evidence that Jenkins had been previously convicted for selling cocaine. However, the circuit court also held that the prosecution was not prohibited from presenting evidence that Jenkins had an unspecified prior felony conviction. Additionally, the circuit court further held that the prosecution was not prohibited from presenting evidence that Jenkins was on probation for that prior unspecified felony conviction.
 

 ¶ 9. Notwithstanding the fact that the circuit court granted his motion in limine in part, Jenkins maintains that the circuit court erred when it denied his motion in limine in part. “Usually, evidence of another crime or prior bad act is not admissible.”
 
 Simmons v. State,
 
 813 So.2d 710, 716 (¶ 30) (Miss.2002) (citing
 
 Ballenger v. State, 667
 
 So.2d 1242, 1256 (Miss.1995)). However, evidence or proof of a prior crime or bad act is admissible where the offense charged and the prior crime are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences.
 
 Underwood v. State,
 
 708 So.2d 18, 32 (¶ 41) (Miss.1998). “Evidence of other crimes or
 
 *53
 
 bad acts is also admissible in order to tell the complete story so as not to confuse the jury.”
 
 Ballenger,
 
 667 So.2d at 1257. The rationale for admitting evidence of certain closely related acts is that the prosecution “has a legitimate interest in telling a rational and coherent story of what happened.”
 
 Brown v. State,
 
 483 So.2d 328, 330 (Miss.1986) (internal quotation omitted).
 

 ¶ 10. The prosecution did not introduce evidence that Jenkins was on probation or that he had an outstanding warrant for absconding from supervision as evidence of Jenkins’s character or as part of some effort to demonstrate that Jenkins was acting in conformity with his prior unspecified felony conviction. Instead, the prosecution introduced evidence that Jenkins had previously been convicted of some unspecified felony to explain the events that led to Jenkins’s arrest. That is, that Jenkins had previously been convicted of a felony; he had been placed on probation for that prior felony; and he had absconded from probation supervision all shed light on the events that transpired on the day that Jenkins was arrested. That evidence explained why Officers Dillon and Roberts recognized Jenkins. That evidence also explained why Officers Dillon and Roberts knew that there was an outstanding warrant for Jenkins’s arrest. Furthermore, that evidence explained why Jenkins ran from Officers Dillon and Roberts. Finally, that evidence explained why Officers Dillon and Roberts chased Jenkins and arrested him.
 

 ¶ 11. Without being allowed to present the evidence at issue, the jury would not have understood why the probation officers were in Jenkins’s vicinity, why they recognized Jenkins, why they knew there was a warrant for Jenkins’s arrest, why Jenkins recognized them, why Jenkins ran from them, or why the probation officers pursued Jenkins. If the prosecution had been prohibited from explaining those matters, it would have appeared as though the probation officers had harassed Jenkins and then pursued and arrested him without probable cause. There is no evidence in the record that the probation officers were in a marked squad car. There is no evidence that the probation officers were wearing uniforms. Absent the warrant and Jenkins’s status as a felony probationer, Jenkins had no duty to obey Officer Dillon’s request that Jenkins stop and talk to the probation officers. The prosecution would have had to attempt to counter the appearance that the two probation officers arrested a random person they had encountered for no other reason but the fact that Jenkins ran from them, when — if the facts were presented in that light — Jenkins would have had the right to just walk away from the probation officers.
 

 ¶ 12. Jenkins cites
 
 Eubanks v. State,
 
 419 So.2d 1330 (Miss.1982) for the proposition that proof of a crime distinct from that alleged in the indictment should not be admitted against the accused because “[s]uch evidence tends to divert the minds of the jury from the true issue, and to prejudice and mislead them.”
 
 Id.
 
 at 1331 (quoting
 
 Floyd v. State,
 
 166 Miss. 15, 35, 148 So. 226, 230 (1933)). The defendant in
 
 Eubanks
 
 was charged with simple assault on a conservation officer, and the trial court had allowed the prosecution to introduce evidence that there was an outstanding warrant to arrest the defendant for reckless driving, possession of alcoholic beverages, failing to yield to a blue light and resisting arrest.
 
 Id.
 
 at 1332. On appeal, the supreme court held that the evidence of the warrant was admissible to prove that it was within the arresting officer’s authority to arrest the defendant in
 
 Eubanks,
 
 but the trial court erred when it allowed the prosecution to introduce evidence regarding the details of the prior
 
 *54
 
 acts for which the warrant had been issued.
 
 Id.
 

 ¶ 13. In the case presently before us, the prosecution never offered any evidence that Jenkins had previously been convicted for selling cocaine. However, through his own testimony, Jenkins informed the jury that his prior conviction was drug related. Specifically, Jenkins testified that he had been convicted in 2002, he “got out” and he “violated, using alcohol.” Jenkins then testified that: “They sent me to restitution. I paid my fees and fines off. So I thought all this was behind me. So they put me back
 
 in Drug Court.”
 
 (Emphasis added). The following exchange then transpired between Jenkins and his court-appointed attorney:
 

 Q. Titus, okay, you go back
 
 into Drug Court.
 
 Tell the jury what happened next.
 

 A. I stopped reporting. They tried to lock me up again for no reason.
 

 [[Image here]]
 

 Q. Okay let’s go back to May 2 [the date of the arrest].
 

 [[Image here]]
 

 A. I knew I couldn’t get away. That was a long way from the bushes, so I stopped myself. So they said you were fixing to run for a reason. I said I had a warrant, that’s why I was fixing to run,
 
 a Drug Court warrant.
 

 (Emphasis added). In his closing argument, Jenkins’s attorney stated, “[Jenkins] told you the truth about a previous crime. He told you
 
 they had a drug warrant
 
 — a warrant out for his arrest
 
 for Drug Court.
 
 He didn’t have to say that. He was truthful.” (Emphasis added). As previously mentioned, the circuit court had held that the prosecution could introduce evidence that Jenkins’s prior conviction was for selling cocaine if Jenkins first “opened the door.” Despite Jenkins and his attorney repeatedly informing the jury that Jenkins had been to Drug Court, the prosecution did not introduce any evidence that Jenkins had a prior conviction for selling cocaine.
 

 ¶ 14. We find that the trial judge did not abuse his discretion when he allowed the prosecution to introduce evidence that Jenkins was on probation for an unspecified prior felony conviction. That evidence explained the events that led to Jenkins’s arrest. Furthermore, despite his protestations to the contrary, Jenkins and his attorney told the jury that Jenkins had been to Drug Court — thereby relating Jenkins’s prior conviction to drug-related activity. The prosecution abided by the trial court’s order to refrain from discussing the nature of Jenkins’s prior conviction. We find that this issue is without merit.
 

 B. RULE 403
 

 ¶ 15. Jenkins claims that the trial court erred when it allowed the prosecution to submit the evidence discussed above because the court had failed to conduct an on-the-record Rule 403 balancing test. Jenkins argues that the circuit court should have used language to show that he was fulfilling the requirements of the test, contrasting how the probative value of his prior felony conviction was substantially outweighed by the danger of unfair prejudice. Where a trial court determines that potentially prejudicial evidence possesses significant probative value, it is within that court’s sound discretion whether or not to admit such evidence since Rule 403 does not mandate exclusion, but rather provides that the evidence
 
 may
 
 be excluded.
 
 Baldwin v. State,
 
 784 So.2d 148, 156 (¶ 27) (Miss.2001). In reviewing the trial court’s decision, we do not conduct our own de novo Rule 403 balancing test — we simply determine whether the trial court abused its discretion in weighing the factors and
 
 *55
 
 in admitting or excluding the evidence.
 
 Id.
 

 ¶ 16. As discussed above, the trial court held that the prosecution could “go into the fact that [Jenkins] was on probation at the time. These were probation officers. That there was an active warrant for his arrest, and that’s the reason he was arrested .... And as long as he doesn’t get on the stand and open the door, we are not going to say what he was on probation for.... [The probation officers] can testify to everything, other than the fact that [Jenkins] was on probation for sale of cocaine.”
 

 ¶ 17. Even though evidence of Jenkins’s prior felony conviction was deemed admissible pursuant to Rule 404(b), that evidence must still survive the required balancing test pursuant to Rule 403.
 
 Jones v. State,
 
 920 So.2d 465, 475 (¶ 32) (Miss.2006). Rule 403 states: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Rule 403 is the “ultimate filter through which all otherwise admissible evidence must pass.”
 
 Watts v. State,
 
 635 So.2d 1364, 1368 (Miss.1994).
 

 ¶ 18. The Mississippi Supreme Court has held that a trial judge who did not say the “magic words” regarding whether the probative value of evidence outweighed the prejudicial effect of that evidence would not be held in error because the trial judge “clearly performed a Rule 403 analysis.”
 
 Pitchford v. State,
 
 45 So.3d 216, 246 (¶ 128) (Miss.2010). Additionally, in
 
 Pollard v. State,
 
 932 So.2d 82, 88 (¶ 15) (Miss.Ct.App.2006), this Court held that although a trial judge had not used the “magic words,” it was implicit in the trial judge’s statements that the trial judge had found evidence more probative than prejudicial.
 

 ¶ 19. During the hearing on Jenkins’s motion in limine, the following exchange transpired:
 

 [Jenkins’s attorney]: If he’s out on a warrant — I mean, if he’s out on a warrant, can’t they just say he was out on a warrant and not that he was out on a warrant for sale of cocaine? Because it’s so similar, it’s going to be highly prejudicial. And I don’t see any probative value that—
 

 The Court: What exception would you seek to introduce it under, Mr. Byrd [ (prosecutor) ]? I mean, I think the Court is clear that this nebulous — where we list all the reasons that it might be admitted — is wrong. I mean, I think you have to list the reason that that prior conviction has been introduced. I mean, for the purpose of, and what exception would you argue.
 

 [Prosecution]: The fact that it is interconnected, the two cases are so interconnected that the jury can’t get the whole picture. And that’s specifically listed under the annotations in the rules as written by the Supreme Court, 404(b), when it specifically says those other exceptions are not conclusive.
 

 The Court: Would you get that annotated rule book off of the bench?
 

 [Prosecution]: Also, your Honor, again, as I said, they are probation officers. They are charged with enforcing the probation rules.
 

 The Court: I understand that. But I think you can — I mean, I don’t think it — you could certainly say he’s on probation without saying he’s on probation for sale of cocaine. I mean, that’s easy enough to fix.
 

 [Jenkins’s attorney]: And, Your Hon- or, that’s our argument, I think that
 
 *56
 
 clearly gives a reason to stop without going into the sale of cocaine.
 

 [[Image here]]
 

 The Court: All right [reading from an annotated version from our decision in
 
 Bailey v. State,
 
 956 So.2d 1016, 1042 (Miss.Ct.App.2007),] “The officer’s testimony that he arrested the defendant because he suspected the defendant violated Jackson’s open container ordinance, and that the defendant resisted arrest. It was necessary to present a complete story of how the defendant reappeared at a gas station.”
 

 All right, I’m going to grant the motion in part. I’m going to let the State go into the fact that he was on probation at the time. These were probation officers. That there was an active warrant for his arrest, and that’s the reason he was arrested.
 

 And as long as he doesn’t get on the stand and open the door, we are not going to say what he was on probation for.
 

 [[Image here]]
 

 [Prosecution]: Just so we are clear. And, obviously, I want to make sure my witnesses follow the ruling of the Court. They can testify that they are probation officers, obviously, and their job is what it is.
 

 The Court: They can testify to everything, other than the fact that he was on probation for sale of cocaine.
 

 We find that the trial court implicitly performed the requisite balancing test and found that the evidence of Jenkins’s prior conviction — so long as the precise nature of that conviction was not put before the jury — was more probative than prejudicial. Although the trial court did not utter the “magic words” by expressly stating that the probative value of the evidence at issue would substantially outweigh any danger of unfair prejudice, the court clearly weighed the potential prejudice to Jenkins’s prior felony conviction against its probative value. Thus, we find that the trial court did not abuse its discretion when it failed to recite the “magic words” that correlate to the Rule 403 balancing test. It follows that we find no merit to this issue.
 

 II. PLAIN ERROR REGARDING PROSECUTORIAL MISCONDUCT
 

 ¶ 20. Jenkins claims the circuit court committed plain error when it did not, sua sponte, prohibit the prosecution from eliciting testimony from Officer Dillon regarding the fact that Jenkins had opted to remain silent after he was arrested. Specifically, Jenkins takes issue with the following portions of Officer Dillon’s direct testimony:
 

 [Prosecution]: Now, you said you placed him in custody. How did [Jenkins] act whenever you placed him in custody and charged him with possession of cocaine? Officer Dillon: He was unwilling to speak to me.
 

 [Prosecution]: Did he deny possessing the drugs?
 

 Officer Dillon: He did not deny it.
 

 [[Image here]]
 

 [Prosecution]: Okay, Officer Dillon, so you got him into custody. What did you do after you got Mr. Jenkins into custody?
 

 Officer Dillon: We transported Mr. Jenkins to the Pike County [J]ail.
 

 [Prosecution]: At that point in time, did you question him further?
 

 Officer Dillon: No sir, he was unwilling to speak. He wasn’t speaking to us at any point.
 

 According to Jenkins, Officer Dillon’s testimony tended to indicate that, because he did not deny that the cocaine belonged to
 
 *57
 
 him, the jury assumed that it was, in fact, Jenkins’s cocaine.
 

 ¶ 21. Jenkins concedes that his attorney did not object to any portion of Officer Dillon’s testimony. When a party fails to raise a contemporaneous objection to the introduction of evidence, that party waives the right to take issue with the introduction of that evidence on appeal.
 
 Shavers v. State,
 
 455 So.2d 1299, 1302 (Miss.1984). The rationale behind the contemporaneous objection rule is “so that the [trial] court may, when possible, correct the error with proper instructions to the jury.”
 
 Baker v. State,
 
 327 So.2d 288, 292-93 (Miss.1976). Therefore, a trial judge will not be found in error on a matter not presented to him or her for decision.
 
 Smith v. State,
 
 724 So.2d 280, 319 (¶ 155) (Miss.1998).
 

 ¶ 22. Nevertheless, Jenkins claims the trial court committed plain error when it did not, sua sponte, prohibit the introduction of Officer Dillon’s testimony because the testimony at issue addressed Jenkins’s “fundamental right” to remain silent. The plain-error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice.
 
 Gray v. State,
 
 549 So.2d 1316, 1321 (Miss.1989). The plain-error rule will only be applied when a defendant’s substantive or fundamental rights are affected.
 
 Grubb v. State,
 
 584 So.2d 786, 789 (Miss.1991). Plain-error review is properly applied when “correcting obvious instances of injustice or misapplied law.”
 
 Newport v. Fact Concerts, Inc.,
 
 453 U.S. 247, 256, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).
 

 ¶ 23. “A defendant has the right to remain silent following arrest, and not have that silence used against him.”
 
 Carr v. State,
 
 655 So.2d 824, 845 (Miss.1995). This Court has previously held that “[i]t is error to refer at trial to an accused’s silence after arrest, provided that the silence occurred when the suspect was in custody and had been given
 
 Miranda
 
 warnings about the right to remain silent.”
 
 Walker v. State,
 
 880 So.2d 1074, 1077 (¶ 9) (Miss.Ct.App.2004). However, we have also held that there can be no infringement upon the right to remain silent when the defendant did not exercise that right at the time of his or her arrest.
 
 Sheely v. State,
 
 836 So.2d 798, 801 (¶10) (Miss.Ct.App.2002). Jenkins opted to testify. During his testimony, Jenkins claimed he did
 
 not
 
 remain silent when he was arrested. Specifically, Jenkins testified as follows:
 

 Jenkins: I seen Robert Robertson [sic], the one with the full beard. He get out with his gun out. He telling [sic] me [sic] to get down, get down. He got [sic] a gun on me so I started down. By that time he done came and put his knee on my back and put the gun to my head. So I’m laying [sic] on the ground.
 
 I said, [“]what’d I do, what’d I do.]!’]
 

 [[Image here]]
 

 They said[,][“]why you run.[”]
 
 I said
 
 [,][“]/
 
 wasn’t going to run, I was fixing to run, but I didn’t, I stopped myself before I ran. I knew I couldn’t get away. That was a long way from the bushes, so I stopped my
 
 self.[”]
 

 So they said[,][“]you were fixing to run for a reason.[”]
 
 I said
 
 [,][“]/
 
 had a warrant, that’s why I was fixing to run, a Drug Court warrant.]!’’]
 

 [[Image here]]
 

 So Todd come [sic] back around with a bag and said[,] “that’s why you ran, right here.”
 
 I said [,][“]that’s not mine, sir,]!’] like that.
 

 (Emphasis added). Moreover, Jenkins testified that the probation officers showed him a picture of Nobles and told Jenkins that the charges against him would be dropped if Jenkins would tell them where
 
 *58
 
 they could find Nobles. Jenkins testified that he responded,
 
 “I said, I don’t know him.”
 
 During cross-examination, the prosecution asked Jenkins whether he had denied that he possessed cocaine. In response, Jenkins testified that
 
 he told the probation officers that he had denied that he possessed the cocaine.
 
 Consequently, Jenkins testified that he had not exercised his right to remain silent after he was arrested.
 

 ¶ 24. Even if Jenkins testified that he had exercised his right to remain silent after he was arrested, a defendant’s due-process rights are not violated by prosecutorial comments concerning that defendant’s post-arrest silence when that defendant did not receive
 
 a Miranda
 
 warning.
 
 Emery v. State,
 
 869 So.2d 405, 409 (¶ 20) (Miss.2004). The record does not reflect that Jenkins received a
 
 Miranda
 
 warning when he was initially taken into custody. Neither the United States Supreme Court nor the Mississippi Supreme Court has addressed whether a violation of a defendant’s right to remain silent occurs when the prosecution uses a defendant’s post-arrest, pr
 
 e-Miranda
 
 silence as substantive evidence of that defendant’s guilt. In
 
 Hurt v. State,
 
 34 So.3d 1191, 1200 (¶ 24) (Miss.Ct.App.2010), this Court held that there is no “plain, clear[,] or obvious error” regarding the introduction of a defendant’s post-arrest,
 
 pre-Mi-randa
 
 silence during the prosecution’s case-in-chief. We further discussed
 
 United State v. Salinas,
 
 480 F.3d 750, 758 (5th Cir.2007), in which the United States Fifth Circuit Court of Appeals detailed the split among the federal circuits regarding whether the use of post-arrest,
 
 pre-Mi-randa
 
 silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination.
 
 Hurt,
 
 34 So.3d at 1198 (¶ 18). We ultimately held as follows:
 

 As shown, the law surrounding the introduction of a defendant’s post-arrest, pre-Miranda silence during the prosecution’s case-in-chief is far from “plain, clear or obvious.” There is a significant federal circuit court split regarding this issue, and the United States Supreme Court has yet to address it. The Fifth Circuit addressed the issue in
 
 Salinas
 
 and found, after reviewing the issue under a plain-error analysis, that the error could not be held to be a plain error in light of the unsettled law surrounding the issue. This Court agrees that, in the present case, the error cannot be found to meet all the elements of the plain-error test in that it cannot be said to be a “plain, clear or obvious” error under the law in Mississippi. Accordingly, this issue is without merit.
 

 Id.
 
 at 1200 (¶ 24). Following that precedent, we likewise find that the trial court did not commit plain error when it did not, sua sponte, prohibit the testimony at issue in this case. We note, however, that as in
 
 Hurt,
 
 we do not reach the issue of whether the use of post-arrest,
 
 pre-Miranda
 
 silence as substantive evidence
 
 of
 
 a defendant’s guilt violates the Fifth Amendment privilege against self-incrimination.
 
 Id.
 
 at 1199 (¶ 22). Be that as it may, we certainly do not find that the trial court committed plain error. Accordingly, we find no merit to this issue.
 

 ¶ 25. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF AT LEAST ONE-TENTH GRAM BUT LESS THAN TWO GRAMS OF COCAINE AND SENTENCE OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TWELVE YEARS TO SERVE, FOUR YEARS SUSPENDED AND FOUR YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A $10,000 FINE, IS AF
 
 *59
 
 FIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS, P JJ., MYERS, BARNES, CARLTON AND MAXWELL, JJ., CONCUR. ISHEE AND RUSSELL, JJ., NOT PARTICIPATING.
 

 [1]
 

 . Jenkins initially claimed that he was going to relieve himself in the bushes. However, during the trial, he admitted that he recognized the probation officers when they drove up. Jenkins further admitted that he knew there was an outstanding warrant for his arrest because he had absconded from probation supervision.