# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00299-COA

JAMIE D. LADNER A/K/A JAMIE DARYL LADNER A/K/A JAMIE LADNER       APPELLANT

v.

STATE OF MISSISSIPPI       APPELLEE

DATE OF JUDGMENT: 02/27/2020
TRIAL JUDGE: HON. ROGER T. CLARK
COURT FROM WHICH APPEALED: HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL
DISTRICT ATTORNEY: JOEL SMITH
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 02/08/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1. Jamie Ladner appeals his conviction of possession of a firearm by a felon from the Circuit Court of the First Judicial District of Harrison County. Following a jury trial, Ladner was sentenced to serve six years in custody as a non-violent habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015). Ladner now appeals and requests a new trial, arguing that the trial court erred by excluding the testimony of one Debbie Holbrook and by allowing content from Deputy Caleb Gregoire's body camera into evidence. Lastly, Ladner raises the issue of ineffective assistance of counsel. Finding no reversible

error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On February 24, 2018, Harrison County Sheriff's Deputy Caleb Gregoire conducted a traffic stop for an expired tag on a silver Ford SUV driven by Ladner. Deputy Gregoire's body camera recorded the events that transpired, and the footage was admitted into evidence. As Deputy Gregoire approached the truck, he explained to Ladner the purpose of the stop. Deputy Gregoire then asked Ladner for his license and registration and if he had ever been arrested for narcotics use. Ladner informed him that his license was expired and that he had been convicted approximately twenty years prior for manufacturing marijuana. When Deputy Gregoire asked Ladner, "Is that it?" Ladner responded, "No." Deputy Gregoire also asked, "Is there anything illegal in the car or around your person?" Ladner again responded, "No." Ladner further informed Deputy Gregoire that he was taking the truck to have the shocks repaired. Ladner was then instructed to step out of the vehicle and was asked if there were any weapons or contraband in the vehicle. He responded that there were none and consented to a search of the SUV.

¶3.     As Deputy Gregoire prepared to search the SUV, Ladner admitted that his aunt might have left a gun on the front passenger seat. He further claimed that he was unaware of the gun until the traffic stop. When Deputy Gregoire began searching the SUV, he located a glass "meth pipe" and told Ladner that he had seen him push it behind the seat. Deputy Gregoire immediately detained Ladner for possession of drug paraphernalia. Deputy Gregoire read Ladner his rights, and Ladner then admitted that he knew the officer saw him

2

hide the pipe and said that was why he gave Deputy Gregoire permission to search the vehicle. Ladner also acknowledged that he had lied about his knowledge of the presence of the pipe and the gun. Continuing with the search of the vehicle, Deputy Gregoire found a .22-caliber gun on the passenger seat under a bag of Ladner's clothes. Unable to confirm Ladner's prior convictions, Deputy Gregoire seized the gun and issued Ladner a citation for possession of drug paraphernalia. Days after the stop, the Harrison County Sheriff's Office was able to confirm Ladner's prior convictions, and Investigator Jason Walker obtained an arrest warrant.

¶4. Ladner was then arrested for possession of a firearm by a felon and indicted under Mississippi Code Annotated section 97-37-5 (Rev. 2014). The indictment was later amended based on Ladner's status as a non-violent habitual offender. Trial was set for February 18, 2020. On the day before trial, the State presented its motion in limine to prohibit the testimony of a person named Debbie Holbrook, who was expected to testify based upon firsthand knowledge that Ladner's aunt, Becky Gregory (who died prior to the hearing), owned the SUV, that Gregory had asked Ladner to take the SUV to have the shocks replaced, and that the gun belonged to Gregory. The State argued that Holbrook's testimony was hearsay and did not fit within any hearsay exception. The trial court ruled the proposed testimony was hearsay. The trial court further ordered that it would allow testimony regarding who owned the SUV, but the court would not allow testimony regarding what the owner of the SUV asked Ladner to do with the SUV.

¶5. The trial court also heard Ladner's two other motions in limine requesting the court

3

to prohibit or limit any mentioning of (1) any prior convictions under Mississippi Rule of Evidence 609, as they would be more prejudicial than probative, and (2) any evidence presented as Rule 404(b) evidence, as well as any uncharged criminal actions.[1] The admissibility of the body-camera video was raised during the Rule 404(b) motion in limine. The trial court found the mentioning of the meth pipe was troubling and instructed the attorneys to exclude portions of the video that pertained to drug paraphernalia. Ladner's motion in limine was granted with regard to the Rule 404(b) evidence—except for the prior conviction for manufacturing marijuana. *See* MRE 404(b). At trial, the State argued that the body-camera footage relevant to the meth pipe should not be redacted because it would confuse the jury about why the officer began searching the SUV. The trial court ultimately agreed and ruled that the jury would be allowed to see the video, which was redacted in part but not as it pertained to the meth pipe.

¶6. After a two-day trial, the jury found Ladner guilty. Ladner was sentenced to serve six years in the custody of the Mississippi Department of Corrections. The court denied Ladner's motion for a new trial or, in the alternative, judgment notwithstanding the verdict. He now appeals.

## DISCUSSION

### I. The trial court's exclusion of the testimony of Debbie Holbrook was harmless error.

¶7. Ladner argues that the trial court erred in finding Holbrook's testimony to be

---

[1] With regard to the Rule 609 motion in limine, the trial court only allowed evidence of Ladner's conviction of manufacturing a controlled substance, which had given rise to his indictment in 2005.

4

inadmissible hearsay. "This Court's standard of review for the admission of evidence is abuse of discretion." *Dandass v. State*, 233 So. 3d 856, 863 (¶16) (Miss. Ct. App. 2017) (citing *Hobgood v. State*, 926 So. 2d 847, 853 (¶16) (Miss. 2006)). "Therefore, unless that discretion is abused this Court should not overturn the trial court's ruling." *Id.*

¶8. The trial court's decision to not allow the hearsay testimony was an abuse of discretion but was harmless and does not require reversal. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter and is generally not admissible at trial." *Id.* at 863-64 (¶16) (internal quotation mark omitted). Holbrook was expected to corroborate Ladner's testimony that Gregory had asked Ladner to take the SUV for repairs. At the pretrial hearing, the trial court held that Ladner could call Holbrook but that she would be prohibited from providing hearsay testimony. The trial court ruled that Holbrook's proposed testimony was not a "dying declaration or something like that" and would be "pure, blatant hearsay," and therefore the court prohibited the testimony. Attorney Michael Crosby later came forward on Holbrook's behalf and was allowed to submit an affidavit of Holbrook's proposed testimony. He moved the trial court to reconsider its ruling on the motion in limine excluding the testimony. The trial court denied the motion to reconsider. We find that Holbrook's statement was not offered to prove the truth of the matter asserted; rather, it was offered only to show why Ladner was in possession of the truck, and we disagree with the trial court's decision to prohibit the testimony. But this erroneous decision was harmless, *cf. id.* at 865 (¶25), and does not require reversal or rise to the level of a due process violation.

5

The evidence of Ladner's guilt is overwhelming: First, the purported statement Holbrook allegedly heard took place days before Ladner's arrest. Next, Ladner admitted to his knowledge of the gun inside the vehicle at the scene.

¶9. We also note that the matter received an extraordinary amount of consideration (i.e., the trial court allowed a proffer to be made on Holbrook's behalf by an attorney who had not made a formal appearance in the case, and the proffer was accepted by the trial court). The trial court also allowed in some of Holbrook's proposed testimony—just not from Holbrook. The trial court stated that although Ladner was prohibited from providing testimony concerning instructions from his aunt about what to do on the day he was pulled over, Ladner could testify about the ownership of the SUV and the fact that he was getting the shocks repaired, both of which went to the heart of his defense.

¶10. Ultimately, this Court finds no reversible error regarding this issue.

**II.      The trial court did not err by allowing the body-camera footage to be admitted into evidence.**

¶11. Ladner also maintains that the trial court erred in allowing the unedited body-camera footage into evidence. Specifically, Ladner contends that the video contains a significant amount of irrelevant content devoid of any probative value, which, when viewed by the jury, was highly prejudicial and rendered Ladner's trial unfair. We find that the trial court did not abuse its discretion in admitting the evidence.

¶12. During the traffic stop, Deputy Gregoire initiated the search after Ladner gave consent. Deputy Gregoire found the meth pipe when he opened the driver's side door of the SUV. Once Deputy Gregoire discovered the pipe, he handcuffed Ladner and placed him in

6

the backseat of his sheriff's vehicle. Deputy Gregoire then continued to search the vehicle, which led to the recovery of the gun.[2] The trial court made a definitive ruling and deemed the portions of the body-camera footage relating to the meth pipe admissible.

¶13. Prior to the start of trial, the State argued against redacting the body-camera footage because the drug-paraphernalia charge was contemporaneous with the search of the vehicle and the footage explained Deputy Gregoire's actions at the scene. The State contended that it was necessary to tell the complete story to avoid confusing the jury. *Jenkins v. State*, 75 So. 3d 49, 53 (¶9) (Miss. Ct. App. 2011).

¶14. In *Jenkins*, the defendant was sitting on the porch with Quentin Nobles and Sabrina Martin when approached by two MDOC officers, Todd Dillon and Robbie Roberts. *Id.* at 51 (¶2). Both Nobles and Jenkins were under MDOC probation supervision. *Id.* Martin lived in the house and the officers went there because of a tip that Nobles was selling drugs from that location. *Id.* There was an outstanding warrant for Jenkins because he had absconded supervision, and the officers were aware of his warrant. *Id.* As the officers drove by, Jenkins jumped up and began walking toward the back of Martin's house. *Id.* Dillon called out to Jenkins, who ran from him. *Id.* at (¶3). A chase ensued and as Jenkins was running, Dillon witnessed Jenkins throw a plastic bag into a brush. *Id.* Jenkins was apprehended, and Roberts recovered the discarded bag, which was determined to be cocaine. *Id.*

¶15. Jenkins was convicted of possession of at least one-tenth of a gram but less than two

---

[2] The State also represented that it had no intention to mention that Ladner received a misdemeanor conviction for the paraphernalia charge unless Ladner opened the door.

grams of cocaine. *Id.* at (¶4). Before trial, Jenkins filed a motion in limine under Mississippi Rule of Evidence 404(b) to prohibit the prosecution from referring to his conviction for selling cocaine in 2002. *Id.* The circuit court granted and denied the motion in part. *Id.* The circuit court allowed testimony that Jenkins had a prior unspecified conviction, but the State was prohibited from disclosing that felony. *Id.* Jenkins appealed claiming that evidence of his prior conviction was inadmissible pursuant to Mississippi Rules of Evidence 404(b) and 403. *Id.* at (¶7). Our Court affirmed and reasoned that

> evidence or proof of a prior crime or bad act is admissible where the offense charged and the prior crime are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences. . . . Evidence of other crimes or bad acts is also admissible in order to tell the complete story so as not to confuse the jury. . . . The rationale for admitting evidence of certain closely related acts is that the prosecution has a legitimate interest in telling a rational and coherent story of what happened.

*Id.* at 52-53 (¶9) (citations and internal quotation marks omitted).

¶16.    This Court also found that "[w]ithout being allowed to present the evidence at issue, the jury would not have understood why the probation officers were in Jenkins's vicinity, why they recognized Jenkins, why they knew there was a warrant for Jenkins's arrest, why Jenkins recognized them, why Jenkins ran from them, or why the probation officers pursued Jenkins." *Id.* at 53 (¶11). "If the prosecution had been prohibited from explaining those matters, it would have appeared as though the probation officers had harassed Jenkins and then pursued and arrested him without probable cause." *Id.*

¶17.    The same logic applies here. Prior to the search, Deputy Gregoire asked Ladner whether there was any contraband or weapons in the car. Ladner lied and said no. After

8

giving consent to search, Ladner admitted the gun was inside. Once Deputy Gregoire opened the door, he found the meth pipe. The jury was entitled to hear all the circumstances surrounding the stop and the subsequent search. The State did not disclose to the jury that Ladner was convicted of possession of drug paraphernalia, which would have been more prejudicial than probative under Rule 403 of the Mississippi Rules of Evidence. Therefore, we affirm the decision of the trial court.

¶18.   **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD AND LAWRENCE, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., WILSON, P.J., GREENLEE AND LAWRENCE, JJ.; McCARTY, J., JOINS IN PART. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**

**EMFINGER, J., SPECIALLY CONCURRING:**

¶19.   I concur with the majority opinion that the trial court did not err by admitting the body-camera footage into evidence. I write separately to further address the trial court's ruling concerning the proposed testimony of Debbie Holbrook.

¶20.   The State filed a motion in limine the day before trial seeking to prohibit Ladner from calling Holbrook as a witness in this cause. The motion stated the defense had disclosed that Holbrook would be called to testify that

> [Holbrook] is the sister of a woman named Becky Gregory who owned the truck driven by the defendant when he was stopped by law enforcement. She is further expected to testify that Ms. Gregory is now deceased. She is also expected to testify that her sister Gregory asked the Defendant to take her truck and have the shocks fixed.

9

The State argued that "the testimony is irrelevant and also would allow the witness to testify as to hearsay evidence about [a] statement made by a person not testifying in this case at trial."

¶21. The matter came on for hearing on the same day that it was filed. The State argued that Holbrook should not testify to what somebody else said, and, in any event, such evidence was irrelevant to any of the elements in this case. The defense countered that Holbrook was present when her sister asked Ladner to fix the shocks on the truck, and that is how Ladner came into possession of the truck. The defense argued that such testimony was important to the defendant's case because

> that point is important for the jury to know why it was he had the truck and who the truck belonged to, because the State says that the gun in the truck was obvious and it may not have been obvious to Mr. Ladner. And I think the jury is entitled to know why it is that he was in the truck to start with.

The defense confirmed that Holbrook was present and that they had the conversation between the three of them.

¶22. The trial court ruled that Holbrook "can't give that information to the jury without it being hearsay because the State has no opportunity to question the alleged owner." The trial court then stated in its ruling from the bench that

> I will allow testimony with regard to who owned the truck. The defendant, I guess, can testify to that, but I'm not going to allow him to testify what the owner of the truck asked him to do with the truck because that's pure, blatant hearsay.

The trial court clarified that the defendant could testify that it was not his truck and that he was taking it to have the shocks fixed, but the testimony could not get into the specific

10

conversation.

¶23. Although the trial court later entered an order granting the State's motion in limine, in its bench ruling, the court did not prohibit the defense from calling Holbrook as a witness. The court simply excluded any testimony, from Holbrook or the defendant, as to specific statements Gregory had made.[3] The defense did not call Holbrook as a witness at trial.

¶24. The trial court's ruling did not prohibit Holbrook from being called as a witness. Holbrook could have testified to all relevant matter of which she had firsthand knowledge. She could have testified concerning her firsthand knowledge as to the use and possession of the truck and gun by both Ladner and Gregory. Further, if she had firsthand knowledge as to how, when, and under what circumstances Ladner came to be in possession of the truck, nothing in the court's ruling prohibited her from providing such testimony.

¶25. I disagree with the trial court that testimony concerning Gregory's statement to Ladner, wherein she asked him to take the truck and get the shocks fixed, should be excluded as hearsay. An out-of-court statement, to be hearsay, must be offered to prove the truth of the matter asserted. MRE 801(c)(2). We have many cases where out-of-court statements are offered to show why a law enforcement officer took some action. In *Smith v. State*, 258

---

[3] Subsequent to the trial court's ruling and after the trial had started the following day, a new attorney entered an appearance on behalf of Ladner and filed a motion to reconsider the court's ruling concerning Holbrook's testimony. The court allowed the attorney to file the motion but indicated he would not delay the trial to take up the motion under the circumstances. The new attorney did not participate any further in the trial. After the case was submitted to the jury and the jury retired to begin deliberations, the court took up the motion and denied it. Attached to the motion was an affidavit from Holbrook concerning her knowledge of matters relevant to the trial. This affidavit does not match the representations made by counsel during the pretrial hearing on the motion in limine and includes matters that had not been addressed by or ruled on by the court.

11

So. 3d 292, 309 (¶52) (Miss. Ct. App. 2018), this Court explained:

> "Statements do not constitute hearsay when admitted to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *Fullilove* [*v. State*], 101 So. 3d [669,] 675 (¶20) [(Miss. Ct. App. 2012)]; *see also Birkley v. State*, 203 So. 3d 689, 696 (¶16) (Miss. Ct. App. 2016); *Jefferson v. State*, 214 So. 3d 1071, 1078 (¶19) (Miss. Ct. App. 2016) ("An officer's testimony **being offered to explain why he or she acted as he or she did, and not for the truth of the matter asserted, is not hearsay and is admissible**."). In this regard, "[o]ut-of-court statements made to police during the course of their investigations are admissible." *Fullilove*, 101 So. 3d at 675 (¶20).

(Emphasis added). Also, in *Crump v. State*, 237 So. 3d 808, 816 (¶23) (Miss. Ct. App. 2017), this Court said:

> It is true that "if the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then the statement is not hearsay." *Harrell v. State*, 179 So. 3d 16, 20 (¶11) (Miss. Ct. App. 2014).

The significance in this case would have been that the statement was made. Whether the truck needed shocks is not important. If Holbrook heard Gregory ask Ladner to take her car to have the shocks fixed and then Ladner took possession of the truck,[4] then her testimony as to that statement should not have been excluded as hearsay. The testimony was not being offered to prove that the truck needed new shocks. Instead, the testimony was offered to show why and under what circumstances Ladner took possession of the truck. This was relevant to his defense: "it's not my truck or gun and I didn't know the gun was in the truck."

¶26. I agree with the majority that the trial court erred by excluding Holbrook's testimony

---

[4] While this was clearly represented to be the case by defense counsel during the hearing on the State's motion in limine, the latter affidavit seems to indicate that all three people were not together when Ladner took possession of the truck. Had Holbrook appeared to testify, the trial court would have had to assure itself that Holbrook had firsthand knowledge of the facts before the court allowed the testimony.

12

concerning the statement made by Gregory to Ladner in Holbrook's presence. I also agree that such error was harmless under the facts of this case. In *Smith v. State*, 136 So. 3d 424, 435 (¶27) (Miss. 2014), the court stated:

> Harmless-error analysis prevents "setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." *Chapman v. California*, 386 U.S. 18, 22 . . . (1967). We do not reverse a conviction for an erroneous evidentiary ruling unless "the error adversely affects a substantial right of a party," or in other words, unless the ruling prejudiced the accused. *Young* [*v. State*], 99 So. 3d [159,] 165 (¶20) [(Miss. 2012)] (internal quotations omitted). Thus, where it is "clear beyond a reasonable doubt that the error did not contribute to the verdict," we need not reverse the conviction. *Id*. (internal quotations and alterations omitted).

Most of the evidence in the present case came from the body-camera footage of the search of the vehicle and Ladner's statement. I agree that the evidence is clear beyond a reasonable doubt that the error did not contribute to the verdict.

¶27. Accordingly, I specially concur.

**BARNES, C.J., WILSON, P.J., GREENLEE AND LAWRENCE, JJ., JOIN THIS OPINION. McCARTY, J., JOINS THIS OPINION IN PART.**

**McCARTY, J., DISSENTING:**

¶28. It is a bedrock rule that "when an accused is being tried for a serious offense, the jury is entitled to hear any testimony that the appellant might have in the way of an alibi or defense." *Terry v. State*, 718 So. 2d 1115, 1121 (¶28) (Miss. 1998). Because the majority ignores the prejudice suffered by Ladner when the trial court excluded testimony vital to his defense, I respectfully dissent.

¶29. "A criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant's defense

13

where there is testimony to support the theory." *Edmonds v. State*, 955 So. 2d 787, 798 (¶29) (Miss. 2007). The U.S. Supreme Court has likewise held that "the Due Process Clause prohibits a State from punishing an individual without first providing that individual with an opportunity to present every available defense." *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (quotation marks omitted).

¶30. In *Edmonds*, the Mississippi Supreme Court drew upon this foundational principle of due process in reversing and remanding a man's murder conviction. 955 So. 2d at 790 (¶2). Edmonds was accused of killing his half-sister's husband. *Id*. at 790 (¶3). At trial, the circuit court refused to allow Edmonds to testify about his sister's desire to kill her husband. *Id*. at 797 (¶24). The court also refused to allow the jury to see a videotape of the sister appearing on a television show discussing "the tumultuous nature of their relationship." *Id*.

¶31. On appeal, our Supreme Court determined the exclusion of this evidence "clearly prejudiced" Edmonds to the point that it deprived him of a fair trial. *Id*. at 798 (¶32). The Court explained that "[e]ven though the jury had before it some background evidence as to [the half-sister's] character, actions and motivation, the excluded evidence . . . would have strengthened [Edmonds'] defense, possibly creating reasonable doubt in the minds of the jurors." *Id*. at 798-99 (¶32).

¶32. The same due process violation is occurring in this case. Ladner was charged as a felon in possession of a firearm, and his core theory of defense at trial was that it was not his vehicle and not his gun. In support of his case, Ladner sought to present testimony from one Debbie Holbrook, who had overheard Ladner's aunt ask him to get her truck repaired. The

14

aunt passed away prior to trial, and Holbrook signed an affidavit containing her proposed testimony. This testimony was the only remaining evidence that could corroborate or amplify Ladner's theory. As Ladner argued on appeal, the following sequence from Holbrook's affidavit shows parts of her testimony were admissible and relevant to his defense:

> Three days before Jamie was arrested, my sister left the truck at my house with the intent that Jamie would repair the shocks. The truck stayed locked. . . .

> My sister was supposed to get the gun out of the truck when she left. I drove her home. We forgot about the gun.

¶33. The entire theory of defense was that Ladner was only borrowing the truck—that he didn't own it but was getting it fixed for his aunt—and that the gun was hers, not his. The defendant took the stand and told his version of this story. Given his background and some of the circumstances surrounding the stop, Ms. Holbrook's corroboration was one of the only pieces of evidence available to support his theory of defense. It was therefore relevant, and the sequence above was admissible.[5] As was the case in *Edmond*s, exclusion of this critical testimony "clearly prejudiced" the defendant's ability to present his case.

¶34. Some thirty years ago our Supreme Court made clear that "[t]he right to raise defenses and to put on evidence in support of these defenses is a substantial right—that of due process." *Darby v. State*, 538 So. 2d 1168, 1174 (Miss. 1989). And due process is further safeguarded by our state constitution. Miss. Const. art. 3, § 14. Ladner was prohibited from presenting testimony to support his theory of defense. Because Ladner was not afforded the

---

[5] I agree in all core respects with Judge Emfinger's thoughtful separate opinion that the statement was not entirely composed of hearsay. However, I disagree with the conclusion the exclusion of the testimony was harmless.

15

process he was due under our constitution and our precedent, I respectfully dissent. The exclusion of Ms. Holbrook's corroborating testimony deprived Ladner of a fair trial; therefore, we should reverse and remand for a new trial.[6]

---

[6] While reversal on this point alone is warranted, we should note that the trial court admitted the footage from the investigating officer's body camera without having first viewed the recording. The Mississippi Supreme Court has discouraged trial courts from the wholesale admission of recorded evidence that has not been reviewed. *See, e.g.*, *Tard v. State*, 132 So. 3d 550, 553 (¶11) (Miss. 2014) (reversing where "the trial court did not review the entire videotaped interrogation" of a defendant, although the point was to consider "the totality of the circumstances" of a purported confession). On remand, any argument as to the contents of the recording of the stop could be sharpened, and the trial court has now viewed the tape.