# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01828-COA

**JERMAINE CRUMP**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

DATE OF JUDGMENT:            04/15/2015
TRIAL JUDGE:                 HON. SMITH MURPHEY
COURT FROM WHICH APPEALED:   YALOBUSHA COUNTY CIRCUIT COURT,
                             FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:           JOHN W. CHAMPION
NATURE OF THE CASE:          CRIMINAL - FELONY
TRIAL COURT DISPOSITION:     CONVICTED OF DELIBERATE-DESIGN
                             MURDER AND SENTENCED TO LIFE IN
                             THE CUSTODY OF THE MISSISSIPPI
                             DEPARTMENT OF CORRECTIONS
DISPOSITION:                 AFFIRMED – 06/27/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE IRVING, P.J., BARNES, CARLTON AND WESTBROOKS, JJ.

## BARNES, J., FOR THE COURT:

¶1.    A jury found Jermaine Crump guilty of deliberate-design murder. Crump's appellate

counsel claims the Yalobusha County Circuit Court, First Judicial District, erred when it:

(1) held that Crump could not repeat what the victim allegedly said shortly before Crump

killed her; (2) allowed two law-enforcement officers to provide lay opinions as to whether

the victim would have been a threat to Crump; and (3) held that the jury's verdict was not

contrary to the overwhelming weight of the evidence. Crump has also filed a pro se supplemental brief. He argues that: (4) the prosecution should not have been allowed to introduce his recorded statement into evidence; (5) his retained trial counsel was ineffective; and (6) the prosecution engaged in various forms of misconduct. Finding no reversible error, we affirm the circuit court's judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. As of late 2012, Crump and his mother, Mary Crump, were the joint owners of their three-bedroom house near Coffeeville, Mississippi. Four other people were temporarily living with them: Crump's younger brother, Richard Crump Jr.; Richard's wife, Crystal Redmond Crump; and Richard and Crystal's two young children. Crump believed that Crystal had been intentionally damaging his clothes and computer. The record suggests that he retaliated by pouring water on Crystal's computer. Crump's problems with Crystal continued to escalate as he unsuccessfully tried to have her evicted or prosecuted multiple times.

¶3. It is undisputed that on November 2, 2012, Crump killed Crystal. Among other law-enforcement officers, Chief Deputy Jerry Ferguson of the Yalobusha County Sheriff's Department was dispatched to Crump's house. Crystal's body was lying prone on the front porch. She had been shot numerous times, including three gunshot wounds to the head. Deputy Ferguson arrested Crump, who directed him to the pistol that he had hidden inside a "black makeup-type bag" that "was under a bunch of stuff inside [Mary's] closet." Crump also showed Deputy Ferguson a knife on the floor in the hall, and said it "was the knife

2

[Crystal] had." Deputy Thomas West found two loaded pistol magazines in Crump's pocket, and two boxes of pistol ammunition in Crump's car.

¶4.     Investigator Bryan Sullivant of the Mississippi Bureau of Investigations also responded to the scene. He noticed that Crystal had been wearing bright green latex gloves when she died. Investigator Sullivant later tested Crump's hands for gunshot residue, but Crump had washed his hands. However, Investigator Sullivant took samples from the knife in the hallway. Those samples later tested positive for gunshot residue. That evening, Crump declined to give a statement to Investigator Sullivant.

¶5.     By the next morning, Crump had changed his mind. After detailing the problems he had been having with Crystal, Crump said that Crystal had been standing outside his bedroom immediately before he chased her and killed her. He said Crystal had been holding a knife, but he could not remember which of her hands it was in. He also could not remember what she said before he killed her. Investigator Sullivant asked Crump several times if there were anything strange about Crystal's hands, but Crump never mentioned the bright green latex gloves that Crystal had been wearing.

¶6.     Crump admitted that he shot Crystal as she ran from him. He said that he shot at Crystal once as she was running through the hall, and again as she was near the front door. By then, he did not know whether Crystal still had a knife. When she opened the front door and fell onto the porch, he stood over her and shot her a few more times. Crump said that he had been aiming at Crystal's back, but his shots were hitting her in the head. Crump denied that he had picked up the knife in the hall, but he said that he kicked it after he killed

3

Crystal.

¶7.     During February 2013, Crump was indicted and charged with murder.  His trial was substantially delayed by the question of his mental competency.  Following a May 2013 motion by Crump's lawyer, Crump was evaluated by Dr. John Hutson, a clinical psychologist.  In May 2014, Dr. Hutson recommended further evaluation at the Mississippi State Hospital at Whitfield.

¶8.     After Crump's July 2014 initial evaluation at Whitfield, psychiatrist Dr. Reb McMichael and clinical and forensic psychologist Dr. Amanda Gugliano opined that Crump was not competent to proceed to trial.  Crump was admitted to Whitfield for further evaluation.  During September 2014, Dr. Gugliano again reported that Crump was not competent to proceed to trial.  She explained that Crump appeared "to have a personality disorder with paranoid and schizotypal features."  Crump's evaluation and treatment continued at Whitfield.

¶9.     In January 2015, Dr. McMichael submitted a follow-up report that Crump was able to consult with his lawyer.  Dr. McMichael further opined that Crump would have understood "the nature and quality of his alleged acts" and "he would have known [they were] . . . wrong." After conducting a competency hearing, the circuit court held that Crump was competent to stand trial.

¶10.    Crump's three-day trial began on April 13, 2015.  The prosecution called six witnesses during its case-in-chief.  Asia Gunn testified that she was nine years old when Crump killed Crystal.  Asia was in the home that day, because Crystal had been giving her a perm.  While

4

sitting in the living room, Asia saw Crump shooting at Crystal as he chased her down the hall, and again as he stood over her on the porch. Asia never saw Crystal with a knife, and she never saw a knife in the hallway.

¶11. Deputy Ferguson, Deputy West, and Investigator Sullivant all testified regarding their participation in the investigation. Dr. Erin Barnhart, a forensic pathologist, testified that she performed Crystal's autopsy, and Crystal had three gunshot wounds to the back of her head, one to the side of her torso, one in her right hip, and one in her right arm. Jacob Burchfield, an expert witness employed by the Mississippi Crime Laboratory, testified that gunshot residue was on the sample that Investigator Sullivant collected from the knife.

¶12. Crump participated significantly during his case. He vigorously disagreed with his lawyer's desire to present an insanity defense. Instead, Crump insisted that he had acted in self-defense.

¶13. Crump demanded that his lawyer call David Earl Hoop as a witness. Initially, Hoop did not know anything about the case. When Crump re-called him later, Hoop remembered that Crystal had taken her vehicle to his shop, and he found sugar in Crystal's gas tank. Hoop testified that Crystal was "real mad" when she left his shop. At Crump's insistence, his lawyer also called Crump's aunt, Ebonie Gunn, and his father, Richard Crump Sr., as witnesses. Neither of them knew anything about the shooting.

¶14. Crump's mother, Mary, testified about the living arrangements and Crump's problems with Crystal, but Mary was not at home when Crump killed Crystal. During a phone conversation on the day of the shooting, Crystal told Mary that she thought Crump had put

5

sugar in her gas tank.[1] Mary asked Crystal to "let it go" because Crystal and Crump's brother planned to move out of the house soon. Mary also testified that Crump "got more intense" every time he unsuccessfully tried to get Crystal out of the house.

¶15. Against his lawyer's advice, Crump chose to testify. He said that on the day of the shooting, he heard Crystal talking on the phone with someone. "[F]rom that conversation, [he] felt like [his] life was in danger"; so he "got the [pistol] magazine and . . . prepared [him]self for any bad altercation or whatever the case may be."[2] According to Crump, Crystal said "[g]uess what" as she stood outside his door. Because of the prosecution's hearsay objection, Crump was not allowed to elaborate about what Crystal had said. Although Crump became frustrated by the circuit court's decision, he was able to testify that Crystal was "highly upset," angry, and "hitting stuff." He said that Crystal had a knife in her hand while she was standing outside his door, and he felt like his life was in danger. According to Crump, Crystal "was talking about what she was going to do."

¶16. Crump testified that Crystal ran from him, and he "ran behind her." Crump said that Crystal "was just getting in the den" when he "shot her in the leg[.]"[3] He did not know whether Crystal still had the knife, but he did not see "[any]thing drop[.]" He testified that

---

[1] According to Mary, Crystal suspected that "two or three" people could have poured sugar in her gas tank. Crystal thought Crump was responsible for it "because of some more incidences that had occurred in the house."

[2] Crump bought the pistol approximately a week before he killed Crystal.

[3] Presumably, Crump was referencing what Dr. Barnhart described as the gunshot wound to Crystal's "right hip/thigh area." There was no evidence that Crystal sustained a gunshot wound to either leg.

he was not thinking rationally, and he could not control his response because of his paranoid schizophrenia.[4] He added that he "couldn't stop shooting." However, he maintained that he acted in self-defense. While Crystal was lying on the porch, Crump "just stood over her . . . like a crazy man and just kept on shooting, and [he] was fixing to go and reload and shoot some more until [he] caught [him]self . . . ." During cross-examination, Crump said that he did not know right from wrong, and he could not stop himself. He added that he acted in the heat of the moment, but after he started to think clearly, he realized that what he had done was "very wrong, very bad."

¶17.    The prosecution called Investigator Sullivant during its rebuttal. During Investigator Sullivant's rebuttal testimony, the prosecution introduced Crump's recorded interview into evidence. As mentioned above, the jury found Crump guilty of murder. The circuit court sentenced Crump to life in the custody of the Mississippi Department of Corrections. Following his unsuccessful posttrial motions for a judgment notwithstanding the verdict or a new trial, Crump appeals.

¶18.    As a preliminary matter, we note that Crump's appellate counsel seeks to preserve any issue regarding Crump's competence to stand trial. After the competency hearing, and a few days before the trial, Crump's trial counsel produced a number of letters that Crump had given to his father. The letters were addressed to the circuit judge. Crump's lawyer unsuccessfully sought a continuance on the basis that the content of the letters might change

---

[4] During Crump's competency hearing, Dr. Gugliano opined that Crump did "not have schizophrenia . . . [or] any kind of major mental disorder or defect." Dr. McMichael said that Crump sometimes chose not to communicate rationally, and communication was difficult because of Crump's "personality organization."

Dr. Gugliano's and Dr. McMichael's opinions that Crump was competent. The record is silent regarding whether Dr. Gugliano or Dr. McMichael ever reviewed the letters.

¶19. Crump's appellate counsel states that the record is inadequate for him to argue that the circuit judge abused his discretion by denying the request for a continuance, which could also be construed as a motion to reconsider Crump's competency. However, counsel notes that Crump "participated extensively in his trial[,] . . . there were numerous exchanges between Crump and the [circuit] judge [that] appear consistent with the finding of competency[,]" and Crump was apparently able to communicate with his prior attorney. Thus, while counsel does not concede that Crump was competent, "[he] has determined that the record before the court does not justify raising an issue about Crump's competency to stand trial." He requests "that the competency issue remain viable to raise if necessary" through a motion for postconviction relief. Crump would have to obtain the Mississippi Supreme Court's leave to raise the issue in a motion for postconviction relief. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015). As such, we decline to comment on the subject beyond stating counsel's desire to preserve the issue.

**ANALYSIS**

**I.    Exclusion of Crump's Hearsay Testimony**

¶20. During direct examination, Crump attempted to testify regarding what Crystal said to him as she was standing outside his door. Specifically, Crump said, "I heard a conversation between . . . my mom and Crystal; and when I got in the house, Crystal was at the bookshelf and then she moved all the way - - she moved to the door, and the conversation was, '[g]uess

what[.]'" The prosecution objected that Crump's testimony was hearsay. The circuit court sustained the objection because Crump was "repeating an out-of-court statement." Crump claims the circuit court erred. An appellate court "reviews the trial court's admission or exclusion of evidence for abuse of discretion." *Pauley v. State*, 113 So. 3d 557, 560 (¶3) (Miss. 2013). Additionally, "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." *Id.* (quoting M.R.E. 103(a)).

¶21. Hearsay is "a statement that . . . (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." M.R.E. 801(c).[5] Unless Mississippi law provides otherwise, hearsay is not admissible. M.R.E. 802. According to Crump, his excluded testimony would not have been hearsay, because it would not have been offered to prove the truth of the matter asserted.

¶22. First and foremost, there was no proffer of Crump's testimony as to what Crystal had said to him beyond "[g]uess what[.]" "When testimony is not allowed at trial, a record of the proffered testimony must be made in order to preserve the point for appeal." *McKenzie v. State*, 119 So. 3d 1145, 1149 (¶9) (Miss. Ct. App. 2013) (quoting *Green v. State*, 89 So. 3d 543, 554 (¶28) (Miss. 2012)). Consequently, this issue is procedurally barred.

¶23. Procedural bar notwithstanding, we find that Crump's excluded testimony would not

---

[5] The Mississippi Rules of Evidence were restyled in 2016 "to make them more easily understood and to make style and terminology consistent throughout the rules." M.R.E. 801 advisory committee's note. Although we quote the most recent version of Rule 801(c) and other rules of evidence throughout this opinion, the rules remain substantially the same.

have resulted in reversible error. It is true that "if the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then the statement is not hearsay." *Harrell v. State*, 179 So. 3d 16, 20 (¶11) (Miss. Ct. App. 2014). In *Pauley*, 113 So. 3d at 560 (¶3), a trial court sustained an objection when a defense witness was asked whether the witness knew that the defendant had said that someone had stolen some of his tools. On appeal, the Mississippi Supreme Court held that trial court had erred because the statement was not hearsay. *Id.* at (¶4). The Supreme Court explained that the testimony at issue in that case was not offered to prove that someone had stolen the defendant's tools, "but rather that [the defendant] had harbored the belief that [the person] had stolen his tools." *Id*. However, the Supreme Court went on to hold that the error was harmless because the excluded testimony was cumulative. *Id*.

¶24.     As in *Pauley*, Crump's excluded testimony was offered to prove that he felt threatened by Crystal. It was not offered to prove that she said "[g]uess what[.]" Consequently, Crump's excluded testimony was not hearsay. However, Crump was not prejudiced by the exclusion of the testimony at issue. Crump testified that he thought his "life was in danger." He also testified that Crystal had been "screaming at [him] about what she [was] going to do." The jury also heard his testimony that Crystal "was angry and talking about [how] she [was] tired of this stuff and what she [was] . . . going to do . . . ." It is also significant that, according to Crump, he ultimately reacted because Crystal had a knife, and not based on what she said to him. That is, Crump testified that Crystal had "the knife up, but she didn't say nothing at that moment. I reacted off of her holding the knife." The jury also heard the

10

recording of Crump's interview. Crump said that he heard Crystal tell his mother that he had put sugar in her gas tank. He also said that Crystal was standing outside of his door when she confronted him with a knife, but he did not remember exactly what she had said when she was standing outside his door.

¶25. "A party must do more than simply show some technical error has occurred before he will be entitled to a reversal on the exclusion or admission of evidence; there must be some showing of prejudice." *Pham v. State*, 716 So. 2d 1100, 1102 (¶12) (Miss. 1998). As the State correctly notes, in *Gilbert v. State*, 934 So. 2d 330, 336 (¶18) (Miss. Ct. App. 2006), this Court held that harmless error resulted when a trial court improperly excluded testimony that did not qualify as hearsay, but the witness still informed the jury that the victim was the initial aggressor. The same is true in this case. It was not necessary for Crump to quote Crystal in order for the jury to understand his claim that he killed her in self-defense. Accordingly, even if this issue were not procedurally barred, we would find that the circuit court's error was harmless.

## II. Lay-Opinion Testimony

¶26. Over Crump's objection, Deputy Ferguson testified that based on his experience as a law-enforcement officer, nothing at the scene indicated that Crystal had been assaulting Crump. He also testified over objection that nothing at the scene suggested that Crystal could have harmed Crump or that she was an imminent threat to him. When asked to elaborate on cross-examination, Deputy Ferguson explained that Crump's body "was l[ying] outside the house and apparently had been shot outside the house[, and] there was no weapon

11

around the body."

¶27. Later during cross-examination, Deputy Ferguson was asked whether his testimony would be different if Crystal had been attempting to attack Crump with the knife recovered in the hallway. Deputy Ferguson responded: "She was found outside the house, and that's where she was shot. The knife was found in the hallway." Crump's lawyer then asked the following question:

> Well, let's take this for instance a step further. Let's say that before she left the house or whatever reason she left immediately, that she did have the knife and that she was approaching him or threatening him, wouldn't that explain something as to possibly why she was shot if that w[ere] the case?

Deputy Ferguson answered, "If that w[ere] the case." During redirect, Deputy Ferguson testified over objection that because the knife was approximately thirty feet from Crystal's body, she could not have been threatening Crump with the knife while she was lying on the porch.

¶28. When Agent Sullivant testified, the prosecution asked him if, based on his training, experience, personal observations, and Crump's statement, there was "anything to indicate that Crystal . . . was assaulting Crump[.]" Crump's lawyer did not object, and Agent Sullivant responded, "No." His response was the same when asked without objection whether anything indicated that Crystal had been a threat to Crump.

¶29. On appeal, Crump claims that the testimonies discussed above were improper lay opinions. He notes that neither witness was tendered as an expert in crime-scene reconstruction, and the questions at issue called for opinions based on their experience. He further argues that there was no testimony that their experience afforded them any ability to

12

discern what had happened by observing a crime scene after the fact. Finally, Crump asserts that the testimonies at issue were impermissible because the witnesses expressed opinions about the ultimate issue in the case – whether Crump acted in reasonable self-defense. Crump did not object to Agent Sullivant's testimony. He is procedurally barred from raising an issue about it for the first time on appeal. *Willie v. State*, 204 So. 3d 1268, 1274 (¶13) (Miss. 2016) (citing M.R.E. 103(a)(1)).

¶30.    Deputy Ferguson did not testify as an expert witness. That does not necessarily mean he was prohibited from offering opinion testimony, because his unique qualification as a law-enforcement officer does not prevent him from expressing certain opinions. *See Heflin v. Merrill*, 154 So. 3d 857, 863 (¶25) (Miss. 2014). As a lay witness, he could express any opinion that was rationally based on his perception, but only if it helped the jury understand his testimony or determine a fact in issue. *See* M.R.E. 701(a)-(b). However, as a lay witness, he could not express an opinion that would require calling upon "experience or expertise beyond that of [an] average, randomly selected adult[.]" *See Collins v. State*, 172 So. 3d 724, 739 (¶16) (Miss. 2015). A lay witness's opinion testimony cannot be "based on scientific, technical, or other specialized knowledge . . . ." M.R.E. 701(c).

¶31.    Viewed in full context, Deputy Ferguson testified that Crystal had not been a threat to Crump when she was lying prone on the porch, and the nearest weapon – the knife in the hall – was approximately thirty feet away. The prosecution would not have been required to qualify Deputy Ferguson as an expert witness before he could have testified regarding the distance between the knife and Crystal's body. It is necessary to note that Deputy Ferguson

13

did not opine that Crystal *had never* been a threat to Crump. Likewise, he did not testify that Crump did not act in reasonably necessary self-defense when he began shooting at Crystal. *See* M.R.E. 704 ("An opinion is not objectionable just because it embraces an ultimate issue.").

¶32. Even so, there is no question that the prosecutor phrased direct-examination questions as though Deputy Ferguson would have to rely on his experience as a law-enforcement officer to express an opinion. By definition, such a question does not call for a lay opinion. *Seal v. Miller*, 605 So. 2d 240, 244 (Miss. 1992). We must conclude that the circuit court erred when it allowed Deputy Ferguson to offer opinion testimony in response to a question that called for him to respond based on his experience as a law-enforcement officer.

¶33. The Mississippi Supreme Court has recently reiterated that "because the public hold police officers in great trust, the potential harm to the objecting party requires reversal where a police officer gives expert testimony without first being qualified as such." *Kirk v. State*, 160 So. 3d 685, 693 (¶19) (Miss. 2015) (quoting *Roberts v. Grafe Auto Co.*, 701 So. 2d 1093, 1099 (Miss. 1997)). But in *Kirk*, the Supreme Court held that the issue had been waived due to the lack of an objection and at least in part because "defense counsel interrogated [the deputy] not only in an effort to call into question [the deputy's] expertise regarding strangulation, but also to adduce one of the defense's theories of the case, that the marks on [the victim's] neck had been self-inflicted." *Id*. at 694 (¶21). As discussed above, Crump's lawyer cross-examined Deputy Ferguson and asked him if his opinion would be different if immediately before Crump shot Crystal, she had been threatening Crump with the knife

14

while she was standing outside his door.

¶34. More significantly, in *Kirk*, the Supreme Court did not reverse its prior decisions holding that harmless error resulted where a lay witness offered improper testimony that was cumulative because an expert witness testified to the same effect. *See Le v. State*, 913 So. 2d 913, 937 (¶80) (Miss. 2005) (overruled on other grounds by *Bonds v. State*, 138 So. 3d 914, 919 (¶13) (Miss. 2014)); *Walker v. State*, 740 So. 2d 873, 882-83 (¶¶34-35) (Miss. 1999) (disagreed with on other grounds by *Dilworth v. State*, 909 So. 2d 731, 735 n.4 (Miss. 2005)); *Whittington v. State*, 523 So. 2d 966, 974-75 (Miss. 1988). As mentioned above, Crump objected to Deputy Ferguson's testimony that Crystal was not a threat to Crump while she was lying prone on the porch, and the knife was approximately thirty feet away. Dr. Barnhart testified that aside from a "right[-]to[-]left" gunshot wound to Crystal's torso, all of Crystal's other five gunshot wounds traveled from "back to front." She also testified that none of Crystal's wounds traveled from front to back, and that Crystal would not have been a threat to Crump after the first of three gunshot wounds to the back of the head. What is more, any prejudicial effect of Deputy Ferguson's opinion testimony was substantially mitigated by Crump's subsequent testimony that he acted irrationally when he killed Crystal. For the foregoing reasons, we find that any error in allowing the testimony at issue is harmless.

### III. Weight of the Evidence

¶35. Crump argues that the jury's verdict is contrary to the overwhelming weight of the evidence. He claims that "[t]he only conviction supported by the evidence in this case is one

15

for manslaughter, either in the heat of passion . . . or for what is referred to as imperfect self-defense." "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Shaheed v. State*, 205 So. 3d 1105, 1109 (¶12) (Miss. Ct. App. 2016) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶18) (Miss. 2005)). "The evidence should be viewed in the light most favorable to the verdict, and we will affirm unless the trial court abused its discretion in denying a new trial." *Id*.

¶36.    "An unjustified and unexcused taking of life is presumed to be murder unless there is evidence upon which a jury can rationally justify mitigation down to manslaughter." *Neal v. State*, 805 So. 2d 520, 525 (¶16) (Miss. 2002). Heat-of-passion manslaughter and what is known as "imperfect self-defense" both derive from Mississippi Code Annotated section 97-3-35 (Rev. 2014). *Cook v. State*, 467 So. 2d 203, 207 (Miss. 1985) (citing *Williams v. State*, 127 Miss. 851, 854, 90 So. 705, 706 (1921)). Heat of passion is "[a] state of violent and uncontrollable rage engendered by a blow or certain other provocation." *Wade v. State*, 748 So. 2d 771, 776 (¶16) (Miss. 1999). It also "requires the absence of malice." *Id*. at (¶15). Likewise, one must act without malice for a jury to find that he or she acted in "imperfect self-defense." *Ronk v. State*, 172 So. 3d 1112, 1126 (¶22) (Miss. 2015) ("[U]nder the theory of imperfect self-defense, 'an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm.'").

16

¶37.   Malice is the equivalent of "deliberate design" – the "careful and unhurried consideration of the consequences." *Wade*, 748 So. 2d at 776 (¶15).  A person can quickly form the deliberate design to kill a person; "perhaps only moments before the act." *Wilson v. State*, 936 So. 2d 357, 364 (¶18) (Miss. 2006).  Deliberate design "may be inferred through the intentional use of any instrument which, based on its manner of use, is calculated to produce death or serious bodily injury." *Brown v. State*, 965 So. 2d 1023, 1030 (¶28) (Miss. 2007).  Furthermore, "intent may be proven . . . by showing the acts of the person involved at the time, and . . . the circumstances surrounding the incident." *Boyd v. State*, 977 So. 2d 329, 335 (¶23) (Miss. 2008) (citation omitted).  Ultimately, intent is "a question of fact gleaned by the jury." *Id*.  (quoting *Wheat v. State*, 420 So. 2d 229, 238 (Miss. 1982)).

¶38.   The jury heard testimony that Crump had unsuccessfully tried to have Crystal evicted or prosecuted, and he became "more intense" each time he failed to have her removed from the home.  Crump bought a pistol not long before he killed Crystal.  Crump testified that after he heard Crystal talking to his mother, he loaded the pistol because he was preparing for a confrontation with Crystal.  The jury certainly could have found that Crystal's anger due to the vandalism of her car is not sufficient provocation that will reduce murder to heat-of-passion manslaughter.

¶39.   There was conflicting testimony about whether Crystal had a knife.  But Crump never testified that Crystal advanced on him with a weapon or even threatened him.  Instead, the undisputed proof was that Crystal fled from him, and he pursued her.  It was reasonable for the jury to conclude that Crump could not have had a good-faith belief that Crystal was a

17

threat to him. Moreover, the jury could have held that once Crystal turned and fled from Crump, she was certainly not a threat. Crump testified that he did not know whether Crystal had a knife while she was running from him. After Crystal fell on the porch with one or more gunshot wounds, Crump stood over her and continued to shoot her. None of Crystal's wounds traveled front to back. Viewed in the light most favorable to the jury's verdict, there was evidence that Crump acted with malice. This conclusion defeats Crump's claim that the weight of the evidence supports a manslaughter conviction based on either heat of passion or imperfect self-defense. Because upholding the jury's verdict would not sanction an unconscionable injustice, we find no merit to this issue.

## CRUMP'S PRO SE SUPPLEMENTAL BRIEF

### IV. Crump's Confession

¶40. According to Crump, his confession was involuntary. He claims that it was the product of harassment and coercion. He also claims that authorities ignored his request to speak to a lawyer. This issue is procedurally barred because Crump did not raise it and give the circuit judge an opportunity to rule on it. *See Glasper v. State*, 914 So. 2d 708, 721 (¶30) (Miss. 2005).

### V. Effective Trial Counsel

¶41. Next, Crump claims that his trial counsel was ineffective. The precise nature of Crump's allegations under this heading are somewhat difficult to discern. He initially contends that his lawyer was ineffective because of "abuse of discovery, a contract[,] and other violations under due process[.]" But he does not elaborate regarding his "abuse of

18

discovery" claim. Nor does he explain how his trial counsel supposedly infringed on his right to due process. Crump's allegation about a contract is only slightly more developed. Crump's father retained Crump's trial counsel. Sometime prior to the trial, Crump's father apparently gave him the impression that his lawyer entered some kind of an agreement with the district attorney. Some of the letters that Crump wrote to the circuit judge contained similar allegations. During a hearing on a motion for a continuance, Crump briefly mentioned his belief that his lawyer and the district attorney had some type of contract. Beyond the vague allegation of its existence, Crump never explained what the contract supposedly concerned. His supplemental pro se brief provides no greater clarity. That is, we are unable to determine what contract Crump references.

¶42. Crump also argues that his trial counsel failed to present "letters and evidence of other defenses." Crump does not explain what letters he references, or why his lawyer should have attempted to introduce them into evidence. Nor does Crump explain what "other defenses" his trial counsel should have presented. We note that the circuit judge repeatedly told Crump he was responsible for deciding what defense to present. Crump's trial counsel sought to raise an insanity defense, but Crump vehemently disagreed.

> While this Court may consider the merits of a claim of ineffective assistance of counsel raised for the first time on direct appeal, it is unusual to do so because "we are limited to the trial court record in our review of the claim and there is usually insufficient evidence within the record to evaluate the claim."

*Ragland v. State*, 50 So. 3d 1041, 1044 (¶8) (Miss. Ct. App. 2010) (quoting *Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003)). The appropriate conclusion is usually "to deny relief, preserving the defendant's right to argue the same issue through a petition for

19

post-conviction relief." *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2003) (citing *Read v. State*, 430 So. 2d 832, 837 (Miss. 1983)). We will reach the merits on an ineffective-assistance claim only in instances where "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Wilcher*, 863 So. 2d at 825 (¶171). The State does not stipulate that the record is adequate to review this issue. And we do not find that the record affirmatively shows ineffectiveness of constitutional dimensions. If he chooses to do so, Crump may request the Supreme Court's leave to raise these claims in a motion for postconviction relief. *See* Miss. Code Ann. § 99-39-7.

## VI. Alleged Prosecutorial Misconduct

¶43. Finally, Crump makes several prosecutorial-misconduct allegations. Some of them are so undeveloped that we are unable to review them. For example, Crump's allegations include claims listed only as "change of venue" and "conspiring." Crump withdrew his motion for a change of venue.[6] He does not explain how the prosecution could have influenced that decision. Nor does he explain his allegation of "conspiring." Consequently, we focus on his more developed assertions that the prosecution maliciously contested his request for a bond reduction, selected all of the jurors, coached Asia's testimony, withheld

---

[6] During a hearing on September 5, 2013, Crump's lawyer announced that Crump was waiving "any hearing" on his motion for a change of venue. He clarified that he was withdrawing the motion for a change of venue "subject to the examination of the jury pool[,]" and he reserved the right to renew the motion if "something is revealed by voir dire . . . ." Crump never renewed the motion. The prosecution could not have maliciously opposed something that Crump never asserted.

evidence during discovery, falsified evidence through an unauthentic transcript of his confession, and made improper comments during its opening statement and closing argument.

¶44.　Crump cites no authority suggesting that the prosecution was required to consent to his request to reduce his pretrial bond from $100,000 to $10,000. And although the circuit court denied Crump's motion for a bond reduction, that did not prevent Crump from bonding out. On March 17, 2014, Crump's lawyer noted that Crump's family was "in a position to post a bond for him[,] but because of fear for his safety and the safety of others they've elected not to" post his bond.

¶45.　As for jury selection, it is unclear why Crump thinks the prosecution selected the entire jury. At his insistence, he participated extensively in voir dire and jury selection. He and his lawyer exercised numerous peremptory strikes of potential jurors. At times, his lawyer deferred to Crump's demands to strike or keep a particular member of the venire panel. There is simply no merit to his claim that the prosecution selected all of the jurors.

¶46.　Regarding Asia's testimony, there is no support for the concept that the prosecution influenced or coached her. Asia testified that she and the prosecutor had discussed her testimony. She answered, "Yes" when Crump's lawyer asked if they had discussed it "more than one time[.]" But nothing in the record suggests that Asia's testimony was the product of coercion. And Crump cites no authority suggesting that the prosecution cannot interview its witnesses before they testify.

¶47.　There is also no support for Crump's claim that the prosecution withheld evidence

during discovery or somehow falsified the transcript of his recorded statement. Both allegations appear to be related. The prosecution gave Crump's lawyer a transcript of Crump's statement, but Crump's lawyer never requested a copy of the actual recording. During the trial, there was an issue about Crump's demeanor or emotional state during the interview. The prosecution could not have withheld something that Crump's lawyer never requested. As for Crump's claim that the transcript was falsified, he does not explain his claim. That is, he does not specify how the transcript was inaccurate or how that inaccuracy was intentional. Furthermore, Crump had an opportunity to review the record and identify any inaccuracies.

¶48. Finally, Crump claims that the prosecution made improper comments during its opening statement[7] and closing argument.[8] However, there were no contemporaneous objections to those comments. As a result, he is procedurally barred from complaining about them on appeal. *Johnson v. State*, 204 So. 3d 763, 771 (¶24) (Miss. 2016). We find that none of the conduct Crump discusses under this heading qualifies as prosecutorial misconduct, or that it somehow endangered the fairness of his trial or the impartial administration of justice. This issue is meritless.

---

[7] Crump claims that the prosecution repeatedly said that Crystal "was somehow innocen[t]" because of her gender. The single portion of the record that he cites does not support his interpretation. Instead, the prosecutor said that "[a] young woman's life was taken in the home she was staying [in] by the actions of this Defendant."

[8] Crump complains about the prosecutor's comments that Asia was an eyewitness, and that Crystal "fell out of *her house* as she was running away . . . ." (Emphasis added). Crump claims that both statements were false. However, Asia *was* an eyewitness, so that statement was accurate. The fact that Crystal was technically a guest in the house that belonged to Crump and his mother is trivial at best.

22

¶49. **THE JUDGMENT OF THE YALOBUSHA COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF DELIBERATE-DESIGN MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YALOBUSHA COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**