# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00350-COA

**CHRISTOPHER JOHNSON, JR.**                                   **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/10/2023 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | CHRISTOPHER JOHNSON JR. (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/25/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1. Christopher Johnson Jr. was convicted of first-degree murder with a firearm enhancement and shooting into a dwelling. The Coahoma County Circuit Court sentenced Johnson to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) for first-degree murder and a term of ten years in custody for shooting into a dwelling, to be served concurrently. The court also sentenced Johnson to an additional five years in custody for the firearm enhancement, to be served consecutively to his life sentence for the first-degree murder conviction. Johnson appeals his convictions, arguing that the trial court erred by failing to instruct the jury on the lesser-included offense of manslaughter and

that he received ineffective assistance of counsel. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Johnson had been in an on-again-off-again relationship with Nikerria Moore. Nikerria lived in an apartment with her mother, Michelle Brownlee. Nikerria's sister Idalis Brownlee lived with her fiancé Jarquis Ragland and their two children in the same complex in an apartment above Michelle and Nikerria.

¶3.     On January 31, 2022, Johnson walked into Michelle's apartment unannounced, looking for Nikerria. Michelle testified that Johnson went straight to Nikerria's room, and when he found that she was not home, he asked Michelle, "Where that bitch at because I'm going to beat her ass." Michelle was aware Nikerria was upstairs at Idalis's apartment, but she did not tell Johnson. Johnson left, and Michelle heard him go upstairs toward Idalis's apartment. She testified that she called and texted Nikerria and Idalis, trying to warn them that Johnson was on his way to them. Several people were in Idalis's apartment at that time, including Jarquis, their two children, Nikerria, Jarquis's sister Shakynia Blackmon, and Jarquis's brother and Nikerria's ex-boyfriend Freddie Ragland.

¶4.     Nikerria testified that she told Idalis not to answer the door for Johnson and then hid in a closet. Less than two minutes later, Johnson knocked on Idalis's door. Nobody answered the door, so Johnson continued to knock repeatedly. Shakynia eventually opened the door, and Johnson made entry and went straight to the back of the apartment, walking with his hands in his pockets. Shakynia testified that Jarquis asked Johnson why he was there, and

2

Johnson responded by asking where Nikerria was, stating that "he was coming to beat [Nikerria's] ass." Idalis testified that she told Johnson, "[H]e wasn't fixing to touch [Nikerria]," to which he responded that "he was going to beat [Idalis's] ass too." After this remark to Idalis, Jarquis intervened and escorted Johnson out of their apartment.

¶5.     Idalis testified that as Jarquis was escorting Johnson out, she heard Johnson say he was going to shoot Jarquis in the face. According to Idalis, after Johnson exited the apartment, Jarquis saw him holding a gun, so Jarquis closed the door. Despite this, Johnson fired a gun, and the bullet went through the door, striking Jarquis in the chest. Jarquis collapsed to the ground behind the door. Idalis attempted to perform CPR on Jarquis while Shakynia and Freddie left to go search for Johnson. Michelle, who was still downstairs at the time of the shooting, testified that she heard a gunshot from upstairs about ten minutes after Johnson had left her apartment, so she called the police. Jarquis was declared deceased at the scene.

¶6.     Johnson was indicted by a Coahoma County grand jury in June 2022 on one count of first-degree murder with an enhancement for using a firearm during the commission of a felony and one count of shooting into a dwelling. Johnson pled not guilty and asserted a claim of self-defense. He was subsequently brought to trial on February 8, 2023, and was the only witness to testify in his defense.

¶7.     At trial, Johnson stated that when he went to both Michelle's and Idalis's apartments, he was "acting normal" and had "no type of aggression or anger, no anything." He testified

3

that when he was at Idalis's apartment, he asked where Nikerria was, and Idalis told him she was not there, so he turned around to leave. According to Johnson, Idalis started getting loud when he was turning around to leave. Johnson alleged that as he was walking down the hall, he noticed a gun in Freddie's lap. He further claimed that as he was walking toward the door, he heard Jarquis say to Freddie, "Let me get that," and believed that meant Jarquis was asking Freddie for the gun Johnson allegedly had seen. Johnson testified that as he was backing out of the door, Jarquis said he was going to shoot Johnson in the face. He claimed that Jarquis was acting like he had a gun, and he (Johnson) felt threatened for his life and safety; so he fired his gun once at Jarquis and then ran away.

¶8. After the completion of testimony, the parties submitted proposed jury instructions to the court. Johnson requested an instruction on self-defense, which the court gave. He also proposed an instruction on the lesser-included offense of heat-of-passion manslaughter, Instruction D-4, which provided, in part:

> If you find from the credible evidence in this case beyond a reasonable doubt . . . that Defendant Christopher Johnson, Jr., did kill the deceased, without malice, in the heat of passion, but in cruel or unusual manner, or by the use of a dangerous weapon not in necessary self-defense and without authority of law, then you shall find the Defendant guilty of manslaughter.

The transcripts show that in reviewing Instruction D-4, the trial court stated,

> D-4 is an effort to present a lesser included offense instruction, manslaughter. It appears to be based on heat of passion. That's what it says, "Killed the deceased without malice in the heat of passion." . . . There's a case called

4

*Decatur* [*v.*] *State* [1] . . . from 2021. . . . It says, "Heat of passion is a state of violent and uncontrollable rage engendered by a blow or certain other provocation. The passion or anger must be suddenly aroused at the time of the killing by some immediate and reasonable provocation. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment, or terror. Additionally, words alone and disagreements among people are not enough to invoke the passion required for this defense." I agree. I don't think it's a heat of passion manslaughter case. I think, based upon the evidence, there's an argument of self-defense, but I don't think it's manslaughter. I think it's either murder or self-defense.

Consequently, the trial court refused Johnson's request for an instruction on manslaughter. After the jury deliberated, Johnson was found guilty of first-degree murder of Jarquis and of shooting into a dwelling. The trial court entered its judgment and sentencing order in February 2023. Johnson then filed a motion for judgment notwithstanding the verdict or a new trial, which the trial court denied.

**DISCUSSION**

¶9.     Johnson's appellate counsel initially filed a brief on his behalf asserting one issue on appeal: whether the trial court erred by refusing Johnson's proposed Instruction D-4 on heat-of-passion manslaughter. Specifically, he argues that evidence of his testimony provided at trial supported giving the jury a manslaughter instruction. Johnson then filed a pro se supplemental brief raising a claim of ineffective assistance of counsel in relation to his trial counsel's representation.

**I.     Lesser-Included-Offense Jury Instruction**

---

[1] *See Decatur v. State*, 324 So. 3d 1154, 1163 (¶30) (Miss. Ct. App. 2021).

¶10.     The first issue before this Court is whether the trial court committed reversible error by refusing Johnson's lesser-included-offense instruction on manslaughter. As an initial matter, a lesser-included offense is defined as "one in which all its essential ingredients are contained in the offense for which the accused is indicted, but not all of the essential ingredients of the indicted offense." *State v. Shaw*, 880 So. 2d 296, 301 (¶16) (Miss. 2004) (quoting *Fulcher v. State*, 805 So. 2d 556, 560-61 (¶10) (Miss. Ct. App. 2001)). Under Mississippi caselaw, "[i]t is well settled that 'manslaughter is a lesser-included offense of murder.'" *Anderson v. State*, 361 So. 3d 609, 614 (¶13) (Miss. 2023) (quoting *Shumpert v. State*, 935 So. 2d 962, 968 (¶16) (Miss. 2006)).

¶11.     In this case, the trial court instructed the jury on first-degree murder and self-defense. The trial court found, however, that the evidence failed to support Johnson's proposed instruction on the lesser-included offense of heat-of-passion manslaughter. As a result, the circuit court refused the proposed instruction. Johnson argues that the trial court's ruling was erroneous because his testimony at trial supported giving the jury a manslaughter instruction.

¶12.     "We review a trial judge's denial of a lesser-included-offense jury instruction de novo." *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013). "To be entitled to a lesser-included offense instruction, 'a defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense.'" *Anderson*, 361 So. 3d at 614 (¶13) (quoting *Gilmore*, 119 So. 3d at 286 (¶13)).

¶13. "The refusal of a lesser-included-offense instruction is proper if, when taking all evidence in the light most favorable to the accused, and considering all reasonable favorable inferences in favor of the accused, the jury could not have convicted" of the lesser-included offense. *Id*. at 614 (¶14). In other words, "[i]f no reasonable jury could have found the defendant guilty of the lesser-included offense, we will uphold the denial of the proposed instruction." *Id*. at 614 (¶13) (quoting *Gilmore*, 119 So. 3d at 286 (¶13)). The trial court is permitted to "refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is *without foundation in the evidence*." *Id*. (emphasis added) (quoting *Gilmore*, 119 So. 3d at 286 (¶13)).

¶14. On appeal, while Johnson again focuses his argument on heat-of-passion manslaughter, he also now intertwines that he was entitled to a manslaughter instruction based on the theory of imperfect self-defense.[2]

---

[2] The two grounds Johnson asserts here, "[h]eat-of-passion manslaughter and what is known as 'imperfect self-defense' both derive from Mississippi Code Annotated section 97-3-35 (Rev. 2014)." *Crump v. State*, 237 So. 3d 808, 819 (¶36) (Miss. Ct. App. 2017) (quoting *Cook v. State*, 467 So. 2d 203, 207 (Miss. 1985)). As explained by our supreme court,

> it is important to note that Section 97-3-35 manslaughter has acquired two seemingly separate definitions . . . . There are two theories under which the appellant could be guilty of manslaughter: First, that he killed the deceased "in the heat of passion, without malice, by the use of a deadly weapon, without authority of law, and not in necessary self-defense"[;] . . . second, that he killed the deceased without malice, under the bona fide belief, but without reasonable cause therefor, that it was necessary for him so to do in order to prevent the [deceased] from inflicting death or great bodily harm upon him.

¶15. Primarily, Johnson claims he was entitled to a manslaughter instruction because the jury was presented with evidence showing he acted in the heat of passion. Johnson could be entitled to an instruction on heat-of-passion manslaughter only if there is an evidentiary foundation to support the lesser-included offense. *See McCune v. State*, 989 So. 2d 310, 319 (¶17) (Miss. 2008) ("A lesser-offense instruction can be refused if it is without foundation in the evidence.").

¶16. Mississippi Code Annotated section 97-3-35 (Rev. 2020) states,

> The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense shall be manslaughter.

Importantly, heat-of-passion manslaughter "requires the absence of malice." *Crump*, 237 So. 3d at 819 (¶36) (quoting *Wade*, 748 So. 2d at 776 (¶15)). "[D]enial of a manslaughter instruction is proper where the record is clear that the decedent was killed with malice or deliberate design." *Abeyta v. State*, 137 So. 3d 305, 311 (¶12) (Miss. 2014) (quoting *Batiste v. State*, 121 So. 3d 808, 845 (¶72) (Miss. 2013)).

¶17. "When a deadly weapon is used, . . . malice is implied." *Fair v. State*, 25 So. 3d 380, 385-86 (¶15) (Miss. Ct. App. 2009) (quoting *Turner v. State*, 773 So. 2d 952, 954 (¶7) (Miss. Ct. App. 2000)). For the defendant "to overcome that malice implication, there must be some evidence in the record from which the jury could determine that the act was not the result of malice, but a result of the heat of passion." *Id*. (quoting *Wilson v. State*, 574 So. 2d 1324,

---

*Cook*, 467 So. 2d at 207 (quoting *Williams v. State*, 127 Miss. 851, 90 So. 705, 706 (1922)).

1336 (Miss. 1990)).

¶18.    As defined by our caselaw, heat of passion is

> *a state of violent and uncontrollable rage engendered by a blow or certain other provocation given*, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, *by words or acts of one at the time*. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

*Anderson*, 361 So. 3d at 614-15 (¶14) (quoting *McCune*, 989 So. 2d at 319 (¶15)). "[T]he impassioned reaction of . . . 'the person committing the act should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation.'" *Abeyta*, 137 So. 3d at 310-11 (¶10) (quoting *Agnew v. State*, 783 So. 2d 699, 703 (¶14) (Miss. 2001)). The circumstances must "indicate that a normal mind would be roused to the extent that reason is overthrown and passion usurps the mind destroying judgment." *McCune*, 989 So. 2d at 319 (¶15) (quoting *Agnew*, 783 So. 2d at 704 (¶14)). But "words alone and disagreements among people are not enough to invoke the passion required for this defense." *Abeyta*, 137 So. 3d at 310-11 (¶10) (quoting *Phillips v. State*, 794 So. 2d 1034, 1037 (¶10) (Miss. 2001)).

¶19.    The record shows Johnson killed Jarquis with his gun—a deadly weapon. Thus, malice is implied in his act of killing Jarquis in this case. Here, Johnson's only relevant evidentiary support for heat of passion includes his self-serving testimony that he had a heated exchange of words with Idalis shortly before the shooting and that Jarquis threatened to shoot him. However, according to Johnson's own testimony, his act of firing the gun at the

9

apartment door was provoked by his belief that Jarquis obtained a gun from Freddie and by Jarquis's alleged threat against Johnson. He alleges he acted out of fear for his life and safety. We find that the testimonial evidence Johnson offers in support of his claim here does not support an instruction for heat-of-passion manslaughter.

¶20.    Even taking Johnson's testimony as true, Jarquis's alleged threatening words and the verbal exchange with Idalis are not enough to constitute the "provocation" required for heat of passion. "Mere words, no matter how provocative, are insufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter." *Baker v. State*, 304 So. 3d 707, 712 (¶17) (Miss. Ct. App. 2020) (quoting *Abeyta*, 137 So. 3d at 311 (¶10)). Additionally, the record shows that by the time Johnson fired his gun, he had already walked out of the apartment and was standing outside the door. Meanwhile, Jarquis remained inside the apartment and was standing with at least half of his body behind the door, meaning the apartment door was positioned between Johnson and Jarquis. The evidence does not support Johnson's contention that Jarquis's actions constituted provocation for the heat-of-passion mitigation.

¶21.    Further, we are mindful that heat of passion requires that Johnson acted out of immense anger or rage and the highest degree of exasperation. Johnson's own testimony at trial completely contradicts that he acted with this state of mind, however, because he specifically said, "I was acting normal. I didn't have no type of aggression or anger, no anything." As a result, the evidence in the record—specifically Johnson's testimony at

10

trial—disproves any claim that he shot and killed Jarquis in the heat of passion in response to an immediate and reasonable provocation.

¶22. Because there is no evidence in the record from which a jury could determine that Johnson acted in the heat of passion, the trial court's refusal of Johnson's lesser-included-offense instruction on manslaughter was proper and did not constitute reversible error.

¶23. Next, Johnson now claims that the facts of his case justify a manslaughter instruction based on imperfect self-defense. "[U]nder the theory of imperfect self-defense, 'an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm.'" *Ronk v. State*, 172 So. 3d 1112, 1126 (¶22) (Miss. 2015) (quoting *Wade v. State*, 748 So. 2d 771, 775 (¶12) (Miss. 1999)).

¶24. However, a review of the record shows that Johnson has raised the imperfect self-defense theory for the first time on appeal. The issue of imperfect self-defense was not asserted in any proceedings before the trial court. "Before an issue may be assigned and argued here, it must first have been presented to the trial court." *Martin v. State*, 749 So. 2d 375, 379 (¶10) (Miss. Ct. App. 1999). Any "issues raised for the first time on appeal are procedurally barred from review." *Bland v. State*, 312 So. 3d 417, 419 (¶11) (Miss. Ct. App. 2021) (quoting *Griffin v. State*, 824 So. 2d 632, 635 (¶7) (Miss. Ct. App. 2002)). Because Johnson did not present the imperfect self-defense theory to the trial court for consideration first, he is barred from raising this issue on appeal.

## II.     Ineffective Assistance of Counsel

¶25.    Johnson also filed a pro se supplemental brief asserting that his trial counsel's assistance was constitutionally ineffective. He specifically asserts that his defense counsel failed "to present or explore forensic evidence and [F]acebook post (character evidence)" as he allegedly requested.

¶26.    Our courts have repeatedly held that "ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Boyd v. State*, 357 So. 3d 1074, 1079 (¶9) (Miss. Ct. App. 2022) (quoting *Cork v. State*, 329 So. 3d 1183, 1191-92 (¶31) (Miss. 2021)). This "Court addresses ineffective assistance of counsel claims on direct appeal only when '[(1)] the record affirmatively shows ineffectiveness of constitutional dimensions, or [(2)] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed.'" *Id*. (quoting *Cork*, 329 So. 3d at 1192 (¶31)).

¶27.    Here, the State specifically asserts that it does not stipulate that the record is adequate for this Court to make findings on the merits. Johnson's ineffective-assistance-of-counsel claim is also based on facts not fully apparent from the record, including facts related to his counsel's trial strategy and tactics. Accordingly, we decline to address the claim on direct appeal without prejudice to Johnson's right to pursue his claim through a motion for post-conviction collateral relief.

## CONCLUSION

¶28. The only defense Johnson raised at trial was self-defense, and the trial court gave a jury instruction for self-defense. Because Johnson did not provide any evidentiary basis upon which he could be convicted of heat-of-passion manslaughter, the trial court properly refused his requested lesser-included-offense instruction. Finding no reversible error, we affirm Johnson's convictions and sentences.

¶29. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**